IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JOEY SHUMATE,

          Plaintiff,

v.                                           CIVIL ACTION NO.   5:11-cv-00980

DYNCORP INTERNATIONAL LLC and
DYNCORP INTERNATIONAL FZ-LLC,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Plaintiff's *Motion to Remand* (Document 7). After careful consideration of the supporting memoranda and all written submissions relative thereto, the Court denies Plaintiff's Motion to Remand, for the reasons that follow.

### I.    *FACTUAL BACKGROUND & PROCEDURAL HISTORY*

On November 3, 2011, Plaintiff Joey Shumate filed this action in the Circuit Court of Raleigh County, West Virginia, against Defendants DynCorp International LLC ("DI") and DynCorp International FZ-LLC ("DIFZ"). (Compl. ¶¶ 1-3.) Plaintiff is a resident of Raleigh County, West Virginia, (Compl. ¶ 1.) and asserts that DI has its corporate headquarters in Virginia. (Compl. ¶ 2.)   DI contends it is a Delaware limited liability company with its principal place of business in Falls Church, Virginia. (Document 1 Ex. C at ¶ 2.) DI apparently is a wholly-owned subsidiary of DynCorp International Inc., such that DI's sole member is DynCorp International

Inc. (*Id.*) DIFZ is a Dubai U.A.E. Free-Zone company with its principal place of business in Dubai Internet City, United Arab Emirates. (Document 1 Ex. C. ¶ 4.)

In his Complaint, Plaintiff alleges that he was "recruited for employment with [DIFZ] while he was living in Raleigh County, West Virginia[,] by [DI], which was acting as a parent and/or agent of [DIFZ]; where appropriate the two entities are jointly referred as 'the defendants'." (Compl. ¶ 6.) Based on his extensive experience in the Middle East, Plaintiff alleges he was recruited to work in Zayed Military City located in Abu Dahbi, U.A.E. (Compl. ¶ 7.) On February 17, 2008, Plaintiff alleges he executed a Foreign Service Employment Agreement ("Agreement") with DIFZ at DI headquarters in Falls Church, Virginia. (Compl. ¶ 8, 9.) Plaintiff alleges the Agreement with DIFZ contains an implied covenant of good faith and fair dealing. (Compl. ¶ 11.) Plaintiff contends the Agreement provided for an annual salary of seventy thousand dollars ($70,000.00) plus additional benefits to be paid every four weeks. (Compl. ¶ 12.)

Plaintiff asserts DIFZ breached the Agreement when it fired him in violation of the Agreement's termination clause. (Compl. ¶¶ 13, 25.) Specifically, Plaintiff alleges that he satisfactorily performed his duties for DIFZ. (Compl. ¶ 14.) Plaintiff alleges that DIFZ employees in Dubia "were entitled to payment of bonuses if they met certain job evaluations and rankings." (Compl. ¶ 15.) Nevertheless, he claims that he was instructed by DIFZ supervisory personnel to falsely modify older evaluations of subordinate employees to prevent such employees from receiving bonuses they were otherwise entitled to receive. (Compl. ¶¶ 16, 17.) After Plaintiff refused to falsely modify the evaluations, Plaintiff alleges he was threatened with retaliation via an email from DIFZ's COO [Chief Operating Officer].[1] (Compl. ¶¶ 18, 19.) After receipt of the

---

1 Plaintiff's Complaint indicates that a copy of this email was attached, but no such email was attached to the state court documents attached to DI's Notice of Removal.

2

allegedly threatening email, Plaintiff contends he filed a complaint with DIFZ for "forcing him to work in a hostile working environment." (Compl. ¶ 20.) In response to his hostile working environment complaint, Plaintiff alleges DIFZ "through its agents and employees, made false and defamatory statements, with malice, about [him], which they published to others." (Compl. ¶ 21.) More precisely, Plaintiff alleges DIFZ through its agents and employees "falsely and maliciously asserted that [he] had stolen and/or wrongfully appropriated company assets." (Compl. ¶ 22.) Plaintiff contends this subjected him to "ridicule, falsehoods, libelous and slanderous statements, all of which amounted to defamation and which were injurious and harmful to his career." (Compl. ¶ 23.)

Plaintiff asserts a breach of contract claim and asks for contractual damages including lost wages and benefits as well as consequential damages. (Compl. ¶ 26.) Plaintiff also alleges tort claims for wrongful termination, defamation, invasion of privacy, and intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 31-45.) He demands consequential, compensatory and punitive damages as well as attorney fees and costs. (Compl. Prayer for Relief.)

On December 13, 2011, DI removed this action to this Court pursuant to 28 U.S.C. § 1441.[2] DI asserts jurisdiction is proper in this Court under 28 U.S.C. § 1332 based on complete diversity of citizenship with an amount in controversy that exceeds $75,000. (Document 1 ¶ 6.) Pursuant to 28 U.S.C. § 1447(c), Plaintiff filed his motion to remand on January 6, 2012. (Document 7). DI responded to Plaintiff's Motion to Remand on January 20, 2012. (Document 10). Plaintiff failed to file a timely reply.

---

2 The record in this case reveals that DIFZ has not been served in this matter. Therefore, DIFZ is not required to consent or join in DI's Notice of Removal, which must be filed within 30 days of service pursuant to 28 U.S.C. § 1446(b). *Barbour v. Int'l Union*, 640 F.3d 599, 612 (4th Cir. 2011).

3

## II. MOTION TO REMAND

*A. Applicable Law*

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a).[3] Federal district courts have original jurisdiction over all civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). It is a long-settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *See Strawn et al. v. AT &T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted). Therefore, in this case, DI has the burden to show the existence of federal jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009) (Faber, J) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481,488 (S.D. W. Va. 2001)). "[A] mere assertion that the amount in controversy exceeds $75,000.00 is insufficient to meet this burden." *White*, 2009 WL 2762060 at *2. In deciding whether to remand a case, this Court must

---

3 Section 1441(a) states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

"resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc*., 187 F.3d 422, 425 (4th Cir. 1999).

## *B. Discussion*

There is no dispute with respect to the diversity of citizenship among the parties. Thus, DI need only establish that the jurisdictional amount of $75,000 is satisfied. Plaintiff moves to remand on two grounds. First, Plaintiff contends that he "stipulated in his Motion to Remand as well as in an Affidavit attached to that Motion that the value of the matter in controversy does not exceed the jurisdictional amount of $75,000." (Document 8 at 6.) (citation omitted). Secondly, Plaintiff contends that, even if his stipulation is viewed as ineffective, Defendant failed to prove by a preponderance of the evidence the amount in controversy exceeds $75,000. (Document 8 at 10-13.) Plaintiff acknowledges that he does not ask for a specific amount in damages in his Complaint. (Document 8 at 3.) In response, DI argues that Plaintiff's post-removal stipulation cannot be used to defeat diversity jurisdiction. (Document 10 at 6, 7.) In addition, DI contends that it has demonstrated by a preponderance of the evidence the amount in controversy exceeds $75,000. (Document 10 at 3-6.) The Court addresses these arguments below.

### *1. Post –Removal Stipulation*

Plaintiff's post-removal stipulation states that:

1. The totality of my damages of any kind, definition, measurement or description being sought in the action does not exceed $74,999.00;
2. I do not seek nor will I accept an award of damages in this action, no matter how defined, measured or described, in an amount greater than $74,999.00; and
3. I acknowledge and admit against interest that the extent of my damages and thus the maximum damages that could be awarded on my claims against the defendants does not, and could not, exceed $74,999.

5

(Document 7 at ¶¶ 1-3; Shumate Aff. ¶¶ 7-9.) This stipulation was filed contemporaneously with Plaintiff's motion to remand. Plaintiff argues, in light of his stipulation, the Court cannot exercise jurisdiction over this action because the jurisdictional amount of $75,000 cannot be satisfied. (Document 8 at 6.)

When properly presented by a plaintiff, stipulations may be used, in part, to limit the amount in controversy for the purpose of defeating jurisdiction in this Court. A stipulation that seeks to limit the amount in controversy must be "a formal, truly binding, *pre-removal* stipulation *signed by counsel* and [his/her] client explicitly limiting recovery." *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485 (S.D. W.Va. 2001) (emphasis added). Further, "the stipulation should be filed contemporaneously with the complaint, which also should contain the sum-certain prayer for relief." *Id*. This Court previously adopted the stipulation requirements in *McCoy* and indicated that the formality requirement is satisfied when a stipulation is signed and notarized. *Settle v. One West Bank, FSB*, 2011 WL 3055263, *2 (S.D. W.Va. Jul 25, 2011). Plaintiff acknowledges that his unilateral stipulation does not meet the *McCoy* stipulation requirements because it was filed post-removal. (Document 8 at 7.) Plaintiff indicates his stipulation, at least in his affidavit, is signed and notarized. (*Id*. at 8.) However, Plaintiff's stipulation is not signed by his counsel. (Shumate Aff.) Nevertheless, Plaintiff contends that post-removal stipulations are honored in this District notwithstanding the *McCoy* requirements. (*Id*.) In support, Plaintiff cites *Walker v. Lowe's Home Centers, Inc*., 2010 U.S. Dist. LEXIS 30798 (S.D. W.Va. 2010). In *Walker*, the case was remanded because the defendant failed to meet its burden with respect to the amount in controversy and, of particular importance to the

6

instant case, the parties filed a *joint stipulation* that the damages did not meet the amount in controversy for diversity jurisdiction. *Walker*, 2010 U.S. Dist. LEXIS 30798 at *5. The Court declines Plaintiff's invitation to reconsider the effect of a post-removal stipulation. Not only was Plaintiff's stipulation filed after removal, but his stipulation was not signed by his counsel.  Therefore, the Court finds that Plaintiff's post-removal unilateral stipulation does not have the effect of rendering the amount in controversy below the jurisdictional minimum.

### *2. Amount in Controversy*

Nevertheless, DI is still required to meet its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000 to sustain this Court's jurisdiction under 28 U.S.C. § 1332(a)(1). *McCoy*, 147 F. Supp. 2d. at 487-489.  In its notice of removal, DI argues the amount in controversy exceeds $75,000 because "Plaintiff alleges that he was employed by DIFZ pursuant to a contract under which his annual salary, alone, was $70,000." (Document 1 ¶ 12) (citing Compl. ¶ 12.). Furthermore, DI contends that Plaintiff "seeks liquidated amounts of compensatory damages for 'serious emotional harm' as well as punitive damages." (Document 1 ¶ 12) (citing Compl. ¶¶ 29-30, Prayer for Relief ¶¶ A-G.) Plaintiff admits that the contract had a salary of $70,000 per year but argues in his motion to remand that Defendant has not met its burden because nothing in the record indicates the actual measure of the loss exceeds $75,000. (Document 8 at 10, 11.)  Additionally, Plaintiff contends that he is under a duty to mitigate his damages. (*Id.*) With respect to his tort claims, Plaintiff argues DI has not satisfied its burden because of the absence of proof that the facts being alleged could be expected to constitute an amount

7

in controversy in excess of $75,000. (*Id.* at 11.) Further, Plaintiff argues the "mere prospect of punitive damages does not preclude a remand." (*Id.*) Finally, Plaintiff argues that DI cannot meet its burden because the stipulation in this case is broader than the typical stipulation because Mr. Shumate has "not simply stipulated that he will not seek judgment in excess of 74,999.00 but has positively and irrevocably averred that the actual amount of his damages does not in fact and in law, exceed that 74,999.00 figure." (Document 8 at 12.)

In response, DI argues the amount in controversy exceeds $75,000 even though Plaintiff failed to plead a specific dollar amount. (Document 10 at 3, 4.) DI contends the Court must attempt to ascertain the amount in controversy by looking at the totality of the circumstances and estimate what a reasonable Plaintiff would demand or claim. (*Id.* at 4.) DI notes that Plaintiff admits that the employment contract was worth a minimum of $70,000 per year. (*Id.*) DI also contends "Plaintiff received a raise on February 6, 2009 so that his annual salary was thereafter $72,800." (*Id.*) However, DI argues that this amount just represents salary, and Plaintiff has also asked for contractual damages on fringe benefits which would not only include "health, disability and life insurance, but also includes a furnished two-bedroom apartment with all utilities and a personal vehicle – all fully paid for by the company." (*Id.* at 5.) Furthermore, DI states that nearly two years have passed since Plaintiff's termination which would bring the lost wage claim alone to approximately $135,000. (*Id.*) In addition, DI argues that "even absent a contractual claim worth well into the six figures, Plaintiff's claims for punitive damages on at least three different tort claims would certainly push the value of this controversy over the

$75,000 threshold." (*Id.*)

"Courts base their decision on the record existing at the time the petition for removal was filed." *McCoy*, 147 F. Supp. 2d. at 489. In determining the amount in controversy, the Court examines "the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." *Id*. The Court may look at the entire record in order to make an independent evaluation of whether or not the amount in controversy exceeds $75,000. *Id*. To determine the amount in controversy, where no specific dollar amount demand is contained in the complaint, this Court is to consider:

> the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed.

*McCoy* at 489. Furthermore, the Court in making this determination "is not required to leave its common sense behind." *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 24 (S.D. W.Va. 1994).

DI meets its burden that the amount in controversy exceeds $75,000. In consideration of the contract damages alone, DI argues that Plaintiff's lost wages claim at the date of removal puts into controversy approximately $135,000. (Document 10 at 5.) Plaintiff does not dispute the dollar figure attached to his salary, but claims that the amount of the salary "hardly settles that matter" because he had a duty to mitigate his damages. (Document 8 at 11.) At the time of removal, no evidence of mitigation is in the record. However, the Court does have Plaintiff's

9

own allegation that "[t]he Agreement provided for an annual salary of seventy thousand dollars ($70,000.00) per annum, plus additional benefits, to be paid to [him] every four weeks." (Compl. ¶12.) Plaintiff was officially terminated on March 22, 2010. (Document 10 Ex. 2.) This case was removed to this Court on December 13, 2011, so Plaintiff had been terminated from his alleged $70,000 annual salary for nearly twenty-one (21) months. Thus, considering the time period between his termination and the removal of this case and the status of the record at the time of removal, Plaintiff's own allegation that his annual salary was $70,000 clearly puts the amount in controversy in excess of $75,000. The Court finds DI has met its burden, by a preponderance of the evidence, based on damages flowing from the breach of contract claim alone. In making this finding, the Court considered if Plaintiff prevails on his breach of contract claim, he could easily be entitled to well over $75,000 in salary plus additional damages for his loss of fringe benefits including health, disability and life insurance, housing and a personal vehicle.

Plaintiff's claims for wrongful termination, defamation, IIED, and invasion of privacy, to the extent that such claims are permitted by the substantive law controlling this dispute, are not needed to find that the amount in controversy exceeds $75,000. Obviously, if Plaintiff were to succeed on the merits of these claims, then it would augment the amount in controversy that already reasonably exceeds $75,000. (Compl. ¶¶ 27-44.) Furthermore, Plaintiff's claims for punitive damages and attorney fees, likewise, need not be considered to reach the jurisdictional amount in controversy; but, of course, if Plaintiff were to be successful on such claims, this would also augment the amount in controversy.

Finally, Plaintiff's contention that his stipulation is somehow broader than the typical stipulation because it is a statement against his interest is of no moment. Plaintiff argues that the

10

Court has confirmed that Plaintiff would be estopped from avoiding his stipulation later in these proceedings as a reason to find the jurisdictional amount in controversy has not been reached. (Document 8 at 12.) Plaintiff reads the *dicta* in footnote five of *Cline v. Allstate Ins. Co.,* 79 F.Supp.2d 641 (S.D. W.Va. 2000), too broadly. Not only does this case predate the *McCoy* stipulation standard, but the Court did not "confirm" that such a promise is binding, but rather suggested that "in all likelihood" the plaintiff would be estopped from later denying the stipulation, which is undoubtedly much different than "confirming" a proposition. Furthermore, the Court has already rejected Plaintiff's argument on the effect of his improperly executed post-removal stipulation. Moreover, if the Court were to adopt Plaintiff's position, it would make the *McCoy* stipulation standard completely meaningless because, in essence, a plaintiff would always be able to submit a "broader" stipulation to defeat jurisdiction at any point the plaintiff saw fit.

Having given consideration to the record, as a whole, the Court finds that DI has sufficiently carried its burden to demonstrate that jurisdiction exists inasmuch as the parties are completely diverse and the amount in controversy exceeds $75,000.

## CONCLUSION

For the reasons stated above, the Court **ORDERS** that Plaintiff's *Motion to Remand* (Document 7) be **DENIED.** Since the Court has determined jurisdiction in this court to be proper, the Court can now appropriately consider DI's Motion to Dismiss. (Document 5.) However, Plaintiff asked to postpone the filing deadline for his response to DI's Motion to Dismiss in the event the Court denied his Motion to Remand. (Document 7 at 2.) For good cause shown,

the Court **ORDERS** Plaintiff to file a response to DI's Motion to Dismiss within **ten (10) days** of the entry of this Order. The Court further **ORDERS** that DI file its reply within **five (5) days** after Plaintiff responds.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 9, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA